UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JAMAL BEKHTYAR                                                              PLAINTIFF

v.                                    CIVIL ACTION NO. 4:17-CV-P105-JHM

GRAYSON COUNTY DETENTION CENTER et al.              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jamal Bekhtyar, proceeding *pro se* and *in forma pauperis*, initiated this civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, the complaint will be dismissed in part and allowed to continue in part, and Plaintiff will be given an opportunity to amend his complaint.

**I. SUMMARY OF CLAIMS**

Plaintiff is currently a pretrial detainee in Nashville, Tennessee. His complaint, however, concerns incidents which occurred while he was in U.S. Marshals Service (USMS) custody at the Grayson County Detention Center (GCDC). Plaintiff names as Defendants the GCDC; the USMS; U.S. Probation Officer Michael Wilson in his official capacity; and GCDC Jailer Jason Woosley in his individual and official capacities.

Plaintiff alleges that on March 28, 2016, before his current incarceration, he contacted his probation officer, Defendant Wilson, and requested and received permission to see his primary care physician, Dr. Sean Ryan, for a "severe insect bite reaction/painful injury to the region of [his] upper-inner-right thigh." He states that Dr. Ryan gave him prescriptions for more than one

antibiotic and follow up orders for bed rest and told Plaintiff to let Dr. Ryan know if his medical condition worsened by the next day. Plaintiff states that he provided all of this information to Defendant Wilson who told him to call first thing the next morning regarding his condition. Plaintiff states that the next morning his condition was worse but that he was not able to contact Defendant Wilson or his doctor because he was arrested by the USMS. Plaintiff states that Defendant Wilson saw Plaintiff at the USMS office after his arrest but that Defendant Wilson "neglected to convey [his] medical condition to the USMS nor to the sit-in AUSA [Assistant U.S. Attorney]."

Plaintiff states that after being arrested, he informed the USMS of his medical condition, referred them to Defendant Wilson for his medical documents, and provided them with the only antibiotic he had been "able to grab as [he] was being detained." He states that the USMS booking officer assured him that the facility where he would be sent would collaborate with his treating physician and treat him appropriately. Plaintiff alleges that his "continuum of care was neglected by the USMS and was not ensured as they stated it would be. They violated my Eighth Amendment rights."

Plaintiff alleges that when he was booked into GCDC, at his request, a female medical staff member came to the intake area, briefly looked at his leg, asked him who his doctor was, and put him in the medical observation pod. He alleges that despite telling her of the medical treatment he had received, including an ultrasound, and his instructions to notify his treating doctor if his condition worsened, "medical staff did not start any of my medications which neglected my medical condition and furthered it to worsen." He further states that when his mother called GCDC to insist that they continue his doctor's orders, the medical staff responded

2

that Plaintiff "'was no longer in Dr. Sean Ryan's care but [he] was now in the care of the USMS.'"

Plaintiff alleges that his condition continued to worsen. He states that that evening one of his antibiotics was started, and he was given an aspirin. He states that the next day, the wound began to bleed, at which time the medical staff "slid some band-aides under the door, told [him] to pack up, and moved [him] to solitary confinement." He alleges that he spent two days in solitary confinement while his wound continued to bleed and to worsen. Plaintiff states that, on April 1, 2016, he was taken to medical for the first time where his wound was wrapped before he was taken to the courthouse for his detention hearing. Plaintiff states that the AUSA and his probation officer had him immediately released "as they feared [he] may lose [his] leg or worse if kept in custody." He states that he went immediately to the hospital where emergency surgery was performed. He attaches copies of medical records and photographs pertaining to his allegations.

As relief, Plaintiff asks for compensatory and punitive damages.

## II. <u>ANALYSIS</u>

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff

has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Claims against Defendant Woosley in his official capacity and the GCDC

Plaintiff's suit against Defendant Woolsey, the GCDC jailer, in his official capacity should be construed as brought against the governmental entity, *i.e.*, Grayson County. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, the Grayson County Detention Center is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959 at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it is Grayson County that is the proper defendant in this case. *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, Grayson County is a "person" for purposes of § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Court will, therefore, construe the claims against Defendant Woosley in his official-capacity and the claims against GCDC as brought against Grayson County.

When a § 1983 claim is made against a municipality, like Grayson County, a court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)

(citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

Here, the Court finds that Plaintiff alleges a GCDC policy not to treat prisoners who are under the authority of the USMS.

With regard to the issue of whether Plaintiff's alleged harm was caused by a constitutional violation, Plaintiff cites to the Eighth Amendment. However, the Eighth Amendment does not apply to pretrial detainees. *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001). "In the context of medical care for prisoners and detainees, it is well established that 'deliberate indifference to a prisoner's [or detainee's] serious illness or injury states a cause of action under § 1983.'" *Weaver v. Shadoan*, 340 F.3d at 410 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) (alteration in original). The claims against GCDC and Defendant Woosley in his official capacity, which are really claims against Grayson County, for deliberate indifference to Plaintiff's medical needs under the Fourteenth Amendment will be allowed to go forward.

### B. Claims against Defendant Woosley in his individual capacity

Plaintiff's individual-capacity claims against Defendant Woosley must be dismissed because Plaintiff has failed to allege facts demonstrating Defendant Woosley's personal involvement in the events giving rise to his complaint. It is well-established that a civil-rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *See, e.g.*, *Monell*, 436 U.S. at 691-92 (holding that § 1983 liability cannot be based upon a theory of *respondeat superior*). Plaintiff has not done so with respect to Defendant Woosley.

The mere fact that Defendant Woosley, as jailer, had supervisory authority over GCDC is insufficient to state a claim for relief under § 1983. His claims against Defendant Woosley in his individual capacity must therefore be dismissed. *See, e.g.*, *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

### C. Claims against USMS and Defendant Wilson

Plaintiff alleges that the USMS did not ensure that his medical care was continued and that Defendant Wilson failed to convey his medical condition to the USMS and AUSA.

The *Bivens* doctrine is a judicially created counterpart to a § 1983 action and pertains to suits filed against federal officials who have allegedly denied a plaintiff's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390-97 (1971). Thus, *Bivens*, not § 1983, applies to Plaintiff's claims against these Defendants. However, a plaintiff cannot bring *Bivens* suits against federal agencies. *See FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). Furthermore, *Bivens* will not support an action against federal officials sued in their official capacity only. *See Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991). Therefore, the Court will dismiss the claims against the USMS and the official-capacity claims against Defendant Wilson.

The Court will provide Plaintiff with an opportunity to amend his complaint to name Defendant Wilson in his individual capacity, as well as GCDC and/or USMS personnel in their individual capacities who he alleges violated his constitutional rights. *See LaFountain v. Harry*,

716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.").

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims against Defendant Woosley in his individual capacity, against the USMS, and against Defendant Wilson in his official capacity are **DENIED** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

**IT IS FURTHER ORDERED** that **within 30 days** of entry of this Order, Plaintiff may amend his complaint to name Defendant Wilson in his individual capacity, as well as any GCDC and/or USMS personnel in their individual capacities who he alleges violated his constitutional rights. After that 30-day period has expired, the Court will, if necessary, conduct an initial review of Plaintiff's amended complaint and/or, if appropriate, enter a Scheduling Order to govern the development of claim(s) permitted to go forward.

The Clerk of Court is **DIRECTED** to send to Plaintiff a *Bivens*/42 U.S.C. § 1983 complaint form with the instant case number and the word "AMENDED" affixed thereto as well as four blank summons forms.

The Clerk of Court is **FURTHER DIRECTED** to terminate the United States Marshals Service as a party to this action.

Date: January 29, 2018

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
4414.009